STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CR-12-257
*MMliKEN- 8/21/2012*

STATE OF MAINE

v.

LUCAS CREAMER

## ORDER ON MOTION TO SUPPRESS MOTOR VEHICLE STOP

### Background

Before the Court is Defendant's Motion to Suppress Motor Vehicle Stop dated July 3, 2012. The Defendant stands indicted for Class C Eluding an Officer, Class D Criminal OUI, and Class E Violation of Condition of Release. All the offenses allegedly occurred on March 28, 2012 in Readfield. The Defendant is represented by Attorney Lisa Whittier, and the State of Maine is represented by Assistant District Attorney Paul Rucha. Hearing on the motion was conducted on July 24, 2012.

The Court has considered the testimony presented on that day, and a DVD admitted into evidence which captured a portion of the Defendant's operation of the motor vehicle. The Court has further considered the parties' oral arguments as well as written memoranda received on August 3, 2012.

1

# FINDINGS

On March 28, 2012 Maine State Trooper Donald Webber received an armed robbery report which allegedly occurred at the Weathervane Restaurant in Readfield. The robber was reported to be wearing a mask at the time of the robbery, and no eyewitness was able to see his face. The suspect was reportedly armed with a bolt-action rifle, and he was alleged to have taken $324. Trooper Webber was also told that the suspect was driving a white vehicle that might be a Mazda model 626 or 323. The report further indicated that the car had a loud exhaust and a defective plate light, and was headed toward Augusta from Readfield.

Approximately 45 minutes after the robbery was first reported, Trooper Webber observed a white car pumping gas at Mulligans at the intersection of Routes 202 and 17. He testified at the hearing that the vehicle was a white Acura, and that he learned after running the registration that the owner was Lucas Creamer, who was out on bail conditions[1] and lived in Bath. Trooper Webber claims that the vehicle had a loud exhaust and that the plate light was not working. He followed the vehicle when it left the Mulligan's parking lot onto Route 17, and turned on his cruiser camera. Trooper Webber did not indicate that the Defendant at this point in the investigation had done anything furtive or evasive.

Trooper Webber made contact with Troopers Rogers and Krech who were driving on Route 17 in his direction. Trooper Webber testified that he observed the white car cross the fog line and the middle line several times. He clarified that the entire car did not

---

[1] There is no evidence in the record as to whether the bail conditions contained any search provisions, and the State does not argue that the bail conditions justified the pursuit or stop of the Defendant.

cross the lines in question. He indicated the vehicle was the only white car he observed in the area after receiving the report. Trooper Webber testified that he initiated a stop not only for the robbery but also for erratic operation. According to Trooper Webber, the vehicle traveled for approximately 10 seconds before pulling over.

Trooper Webber can be heard on the video issuing orders to the driver, but almost immediately after existing his cruiser, the driver took off heading north on Route 17. Trooper Webber pursued the vehicle, which he testified was speeding up to 75 MPH. The vehicle shortly thereafter crashed, and the Defendant was arrested after struggling with the officers.

The cruiser video was admitted as State's Exh. 1. The video itself does not corroborate Trooper Webber's testimony with regard to the loud exhaust, plate light or even the erratic operation. According to Trooper Webber, the faulty plate light cannot be seen on the video because the cruiser's headlights cause a reflection that makes the plate light appear to be illuminated. He stood by his claim that the vehicle had a loud exhaust, and that the driving was erratic. The Court would not describe what was heard on the video as a loud exhaust. Further, while it appears at times that the vehicle was coming close to the lines in question, perhaps due to either the distances between the vehicles, or camera angle, it is difficult to see videographic evidence of the vehicle crossing the lines.

## CONCLUSIONS

The Defendant claims that he was seized at the time he initially pulled to the side of the road, and that the seizure was constitutionally unjustified. However, as the United States Supreme Court held some time ago, a person is not seized within the meaning of

3

the 4th Amendment unless he is subjected to either physical force, or where that is lacking, the person submits to the assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

What is clear from the video is that when Trooper Webber initially attempted to stop the Defendant's vehicle, the Defendant did not in fact submit to his authority. In fact, just the opposite occurred: the Defendant fled from the scene of the attempted detention, at high speed and in violation of provisions of Maine law that require drivers to pull over after being requested or signaled to stop. 29-A MRSA §2414. That conduct provided Trooper Webber with ample constitutional justification to pursue the Defendant, and seize and/or arrest him after pursuit. In *State v. Lear,* 1998 ME 273 the Law Court upheld the Superior Court's denial of a motion to suppress after an operator of a motor vehicle made a U-turn while approaching a roadblock. The trial court concluded that the officer lacked objectively reasonable suspicion justifying a stop of the vehicle based solely on the U-turn. However, once the officer signaled the operator to stop, and the operator failed to do so, the court determined that the officer's suspicion became objectively reasonable. *Id.* at ¶ 7. The Law Court agreed.

In the instant case, the Defendant's response to Trooper Webber's signal to pull over was more extreme than the operator in *Lear*. Not only did he pull over only briefly in violation of Maine law, he then fled the scene of Trooper Webber's attempted detention at high speed. The Court finds it appropriate to consider the entire course of conduct by the Defendant until he was seized within the meaning of the Fourth Amendment. That course of conduct clearly justified his detention and arrest.

4

The entry will be: Motion to Suppress the Motor Vehicle Stop is DENIED.

_8/21/12_
**DATE**

**SUPERIOR COURT JUSTICE**

5